IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH – NORTHERN DIVISION

| | |
|---|---|
| JORDAN ALAN NEVES BREWER,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>JEFFREY ROSS and TREVOR<br>PETERSEN,<br><br>　　　　　　　　Defendants. | **ORDER AND**<br><br>**MEMORANDUM DECISION**<br><br><br>Case No. 1:15-CV-87-TC<br><br>District Judge Tena Campbell |

Pro Se Plaintiff Jordan Alan Neves Brewer brings this civil rights lawsuit under 42

U.S.C. § 1983 against Defendants Special Agent Jeffrey Ross of the F.B.I. and Detective Trevor

Petersen of the Weber County Sheriff's Office.  Mr. Brewer claims that Defendants violated his

Fourth Amendment rights when they arrested him without a warrant, searched him and his car

without probable cause, and then drove him, handcuffed, to his home.  He also claims that

Defendants used excessive force when they placed handcuffs too tightly on his wrists.

In addition, Mr. Brewer, in his opposition to the Defendants' motions, asserted a new

claim for retaliation.[1]  Specifically, he asserts that Defendants' treatment of him was in

retaliation for his request for counsel during their encounter.  He did not raise that claim in his

complaint so it is not properly addressed in his opposition.  He did, however, file a motion for

leave to amend his complaint to add the retaliation claim.[2]

---

[1] See Pl.'s Mem. Opp'n to Def. Ross' Mot. Summ. J. at 50-54, ECF No. 53.

[2] See Pl.'s Mot. Amend Compl., ECF No. 55.

Both Defendants have filed motions for summary judgment,[3] in which they assert qualified immunity. They also oppose Mr. Brewer's motion to amend as futile and procedurally improper.

For the reasons set forth below, the court grants the motions for summary judgment and denies the motion to amend.

## FACTUAL BACKGROUND

### Information Gathered for the Search Warrant

The day before Special Agent Ross arrested Mr. Brewer, a federal magistrate judge issued a warrant authorizing a search of Mr. Brewer's home. Special Agent Ross was the affiant for the affidavit supporting the warrant. In his affidavit, he detailed evidence that, in the view of the federal magistrate judge who issued the warrant, established probable cause to search Mr. Brewer's home for evidence of various child pornography crimes. (See Search Warrant & Aff. of Jeffrey Ross, ECF No. 34-1 (attached as Ex. A to Ross Mot. Summ. J. (hereinafter "Ross Aff."))).

Special Agent Ross recounted an interview he had on August 31, 2011, with "a concerned citizen (hereinafter referred to as C.C.)." (Ross Aff. ¶ 21.) C.C. told Special Agent Ross that he had known Mr. Brewer for many years and had spent a great deal of time with him. C.C. described Mr. Brewer as being "very secretive" with his computer. But C.C. did see images of child pornography on the computer on August 13, 2011, when Mr. Brewer left his bedroom without logging off.

C.C. also told Special Agent Ross that he had seen a folder called "pr0n" on Mr. Brewer's computer. Special Agent Ross knew from previous experience that this term was slang

---

[3] Special Agent Ross styled his pleading "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment." (ECF No. 34.) The court converted his motion to dismiss to a motion for summary judgment.

for pornography. In the folder, C.C. saw videos and still photos of child pornography. C.C. described one of the photos in detail. (See id. ¶ 23.)

In his affidavit, Special Agent Ross also stated that in February 2007 he knew that agents of the Utah Internet Crimes Against Children Task Force had found images of child pornography on Mr. Brewer's computer during a search of Mr. Brewer's home. Special Agent Ross testified that Mr. Brewer had confessed to possession of child pornography.

At the time Special Agent Ross wrote his affidavit, Mr. Brewer was free on bail and awaiting trial on state charges of Sexual Exploitation of a Minor.

On July 6, 2011, United States Magistrate Judge Paul Warner signed the warrant authorizing a search of Mr. Brewer's residence.[4]

In addition to the information in his affidavit submitted to the magistrate judge, Special Agent Ross, as support for his motion here, filed a declaration giving more details of his interview with C.C. (See Decl. of Special Agent Jeffrey Ross, ECF No. 34-2.) Detective Petersen, who was present during Special Agent Ross' interview of C.C., also filed a declaration in which he described the interview with C.C. (See Decl. of Trevor Petersen, ECF No. 44-1.)

Detective Petersen identified C.C. as Almon Jonathan Paul Bates, Mr. Brewer's former roommate. Both Special Agent Ross and Detective Petersen testified in their declarations that Mr. Bates told them Mr. Brewer regularly carried a .9 mm Taurus handgun and a Millenium .45 caliber handgun concealed under his trench coat in shoulder holsters. (Ross Decl. ¶ 5; Petersen Decl. ¶ 9.) Usually the firearms were loaded. According to Mr. Bates, Mr. Brewer had a "hostile attitude toward law enforcement" and said numerous times that if officers entered his

---

[4] Mr. Brewer does not challenge the validity of the search of his home.

residence without legal authority, he "would 'draw down' on law enforcement officers if they 'drew down' on him." (Ross Decl. ¶ 7; Petersen Decl. ¶ 11.)

**<u>Arrest, Search, and Handcuffing of Mr. Brewer</u>**

In the afternoon of September 7, 2011, Special Agent Ross was in Ogden waiting in his car for Detective Petersen. He saw a man who matched Mr. Brewer's description getting into a nearby car. The man was wearing a black trench coat even though the temperature was at least eighty degrees. Special Agent Ross walked up to the car and asked the man if he was Jordan Brewer. Mr. Brewer confirmed his identity. At that point, Special Agent Ross asked Mr. Brewer to step out of the car. He searched Mr. Brewer for weapons (found none) and handcuffed him for officer safety. (<u>See</u> Second Decl. of Special Agent Ross ¶ 7, ECF No. 84-1; Brewer Supplement & Mem. in Opp'n to Ross' Mot. Summ. J. at 16, ECF No. 83.) Then he placed him on the curb near the car's back bumper. Following that, at least according to Mr. Brewer, Special Agent Ross searched Mr. Brewer's car for weapons.[5] No weapons were recovered at the scene.

Following the search of Mr. Brewer's car, Detective Petersen drove Mr. Brewer to his home where they met Special Agent Ross and other law enforcement officials who joined them to search the home. Mr. Brewer alleges that he was forced to remain outside while they searched his home, although his handcuffs were removed during the search.

At the end of the search, Special Agent Ross took a photograph of Mr. Brewer which did not show any marks on Mr. Brewer's wrists. (<u>See</u> Photo, attached as Ex. 2 to Ross Decl.; <u>see also</u>

---

[5] Special Agent Ross denies searching the car, but for purpose of analysis, the court assumes a search occurred.

Petersen Decl. ¶ 23.)  Detective Petersen saw no marks on Mr. Brewer's wrists.  (Petersen Decl. ¶ 24.)

All law enforcement officers left and Mr. Brewer was not taken back into custody.  But later, based on the evidence found in the search, a federal grand jury indicted Mr. Brewer on charges of possession of child pornography and receipt of a firearm while under indictment.  Mr. Brewer pleaded guilty to the charges.

## ANALYSIS[6]

Mr. Brewer brings five claims in his complaint, all of which are based on the Fourth Amendment: (1) unlawful arrest; (2) unlawful detention and transportation; (3) unlawful search of Mr. Brewer (only asserted against Special Agent Ross); (4) unlawful search of Mr. Brewer's car; and (5) excessive force in handcuffing Mr. Brewer.[7]

## Motions for Summary Judgment

"Summary judgment should be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).   The court must draw all reasonable inferences in a light most favorable to Mr. Brewer, the non-moving party.  Id.

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  Id. (quoting Martinez v. Beggs, 563 F.3d 1082,

---

[6] Because Mr. Brewer is proceeding pro se, the court construes his pleadings liberally.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (internal citations omitted).

[7] As noted earlier, Mr. Brewer, in his opposition to Defendants' motions, raises a claim of retaliation for asking to speak to an attorney.  Because he did not allege a retaliation claim in his complaint (see Compl., ECF No. 4), the court will not consider it here.  Moreover, although he filed a motion to amend his complaint to add that claim, the court denies that motion for the reasons set forth below.

1088 (10th Cir. 2009)). Only if Mr. Brewer meets that burden will the court review whether the Defendants have met the traditional summary judgment burden (i.e., showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law). Id.

For the reasons set forth below, the court finds that Mr. Brewer has not established that the Defendants violated his constitutional rights.

**1.** *Arrest, Detention, and Transportation of Mr. Brewer*

Mr. Brewer contends that Special Agent Ross's warrantless arrest of Mr. Brewer was unconstitutional.

> "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed, and the "validity of the arrest does not depend on whether the suspect actually committed a crime." Accordingly, when a warrantless arrest is the subject of a § 1983 action, in order to succeed, a plaintiff must prove that the officer(s) lacked probable cause.

Buck v. City of Albuquerque, 549 F.3d 1269, 1281 (10th Cir. 2008) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004), and Michigan v. DeFillippo, 443 U.S. 31, 36 (1970)).

Both Defendants heard Mr. Bates (C.C.) give specific facts, based on personal observation, that Mr. Brewer possessed child pornography on his computer in his home. Mr. Bates even described one of the images he saw on Mr. Brewer's computer. Mr. Bates was not an anonymous government informant; rather, he was a named citizen who had been Mr. Brewer's roommate. Courts view the information from a citizen less skeptically than information from an informant "from the criminal milieu." Easton v. City of Boulder, 776 F.2d 1441, 1440–50 (10th

Cir. 1985).[8]  The information Special Agent Ross had was sufficient to justify the arrest.  "The standard of probable cause does not require indubitable or necessarily convincing evidence, but only so much "'reasonable trustworthy information'" as "'to warrant a prudent man in believing that the [arrestee has] committed or is committing an offense.'"  Id. at 1450 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

Accordingly, Mr. Brewer does not have a viable claim for unlawful arrest because the evidence in Special Agent Ross' Affidavit and the Defendants' declarations clearly establish probable cause to arrest Mr. Brewer for possession of child pornography.

And once Mr. Brewer was arrested, the officers had authority to transport him to his home where a search was about to occur.

**2.**     *Search of Mr. Brewer*

Mr. Brewer contends that Special Agent Ross's search of his person violated the Fourth Amendment.  Mr. Brewer is incorrect.

The same evidence that justified issuance of the search warrant gave Special Agent Ross probable cause to search Mr. Brewer's person.  An officer who legally arrests a person has authority to search that person "by virtue of the lawful arrest."  United States v. Robinson, 414 U.S. 218, 224 (1973); see also Arizona v. Gant, 556 U.S. 332, 339 (2009) (the "search incident to lawful arrest" rule falls within the well-established exceptions to the warrant requirement, including search of the arrestee's person to protect the arresting officer);  United States v. Pacheco, 884 F.3d 1031, 1043 n.9 (10th Cir. 2018) (the "search incident to arrest" exception

---

[8] Mr. Brewer contends that Mr. Bates was himself interested in child pornography and so his statement should be discounted.  But that contention carries little weight because, even if true, Defendants did not know of any alleged connection between Mr. Bates and child pornography.

allows officer to search arrestee's person to protect the officer) (citing <u>Robinson</u>, 414 U.S. at 235).

Moreover, even if Mr. Brewer was only being detained at that point, Special Agent Ross had more than the requisite reasonable suspicion that Mr. Brewer was armed. Mr. Brewer's former roommate, Almon Bates, told Special Agent Ross and Detective Petersen that Mr. Brewer frequently carried two handguns in a shoulder holster, concealed under a trench coat. When Special Agent Ross encountered Mr. Brewer, Mr. Brewer was wearing a trench coat despite the summer heat. That evidence allowed a search of Mr. Brewer. <u>See, e.g.</u>, <u>Michigan v. Long</u>, 463 U.S. 1032, 1034 (1983) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 24 (1968)).

Given the above, the court finds no violation of Mr. Brewer's right to be free from an unlawful search.

**3.** ***Search of Mr. Brewer's Car***

Mr. Brewer alleges that Special Agent Ross illegally searched the car after Special Agent Ross did not find any weapons on Mr. Brewer. Special Agent Ross denies that he searched the car at any point, but even assuming he did, the search was not illegal.

The Defendants rely on the doctrine set forth in <u>Michigan v. Long</u>, 463 U.S. 1032 (1983), concerning protective weapons sweeps done while a suspect is being detained during a traffic stop.[9] In that case, the United States Supreme Court stated that

> a search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the

---

[9] This is different than the rule concerning "search incident to arrest" that was articulated in <u>Arizona v. Gant</u>, 556 U.S. 332 (2009).

officers to believe that the suspect is dangerous and the suspect may gain immediate control of weapons.

Id. at 1061.  Based on that rule, Special Agent Ross had reason to conduct a protective sweep for weapons in Mr. Brewer's car.

Under the circumstances, it was reasonable to believe that Mr. Brewer posed a threat to officer safety.  As noted above, Mr. Bates told Special Agent Ross that Mr. Brewer concealed, without a permit, two handguns beneath his trench coat, which Mr. Brewer was wearing in eighty-degree heat when Special Agent Ross approached the car.  Moreover, they had been told by a reliable source that Mr. Brewer was hostile to law enforcement.

Mr. Brewer contends that any reasonable suspicion that may have existed when Special Agent Ross searched Mr. Brewer's person dissipated when no guns were found in Mr. Brewer's trench coat.  But the fact that a weapon is not found on the person being searched does not foreclose the officer's need to search the car.  See United States v. Marquez, 603 F. App'x 685, 686 (10th Cir. 2015) (holding that weapons sweep of a truck was justified even after officers were unable to find contraband on any occupant of the truck).  Indeed, because Mr. Brewer was in the car when Special Agent Ross approached, it was reasonable to suspect that Mr. Brewer may have left a weapon in the car.

Special Agent Ross had a reasonable belief that Mr. Brewer would have access to weapons in the car in the event he was released after being detained.  Even though Mr. Brewer was handcuffed, he was sitting next to the car and was not otherwise restrained.  Courts have upheld protective sweeps of a car in situations where the occupants were more constrained than Mr. Brewer.  The Tenth Circuit in United States v. Chambers provided a list of examples.

A suspect may be deemed able to gain access to a weapon even if he is outside the vehicle containing the weapons and under police control during part of the search. See, e.g., Long v. Rison, 464 U.S. 1051, 1052, 104 S. Ct. 732, 79 L. Ed. 2d 191 (1984); United States v. Vinton, 594 F.3d 14, 20-21 (D.C. Cir.2010) [(holding that concern about officer safety was not abated upon ordering defendant out of the car and handcuffing him, because had defendant ultimately not been arrested, he would have been permitted to reenter his automobile and then would have had access to any weapons inside)]; [United States v. Palmer, 360 F.3d 1243, 1246-47 (10th Cir. 2004)] (upholding search when suspect [was] sitting in patrol car while the officers opened his locked glove box); see also [United States v. Dennison, 410 F.3d 1203, 1213 (10th Cir. 2005)] (driver was handcuffed and behind the back of his truck during the search of the truck's cab but the court found that the suspect might gain access to the weapons in his vehicle).

383 F. App'x 719, 722 (10th Cir. 2010). See also, e.g., Flowers v. Fiore, 359 F.3d 23, 30-31 (1st Cir. 2004) (finding protective sweep of handcuffed driver's car was legal because officers had reasonable suspicion that driver was armed and dangerous); United States v. Taylor, 162 F.3d 12, 20-21 (1st Cir. 1998) (holding that limited search of car's passenger compartment for weapons that might have been accessible to occupants was permitted even though the occupants had been secured and taken to the back of the car).

The court finds that even if Special Agent Ross searched the car, he did so for reasons permissible under Michigan v. Long and similar cases.

**4.      *Handcuffing of Mr. Brewer***

Mr. Brewer alleges that he was the victim of excessive force when he was handcuffed.

There is no question that Special Agent Ross had the right to handcuff Mr. Brewer for officer safety. But the way an officer applies handcuffs does have constitutional limits. Even when "'handcuffing is permissible, . . . the manner of handcuffing may render the application of force excessive.'" Koch v. City of Del City, 660 F.3d 1228, 1247 (10th Cir. 2011) (emphasis in original) (quoting Fisher v. City of Las Cruces, 584 F.3d 888, 896 (10th Cir. 2009)).

In his opposition brief, Mr. Brewer contended that Special Agent Ross handcuffed him and "tightened them unnecessarily tight to the point that they hurt."  (Pl.'s Opp'n to Petersen's Mot. Summ. J. at p. 45 ¶ 24, ECF No. 49.)  He says, "I reported to Defendant Ross that the handcuff [*sic*] were hurting me and that I had lost feeling in my fingers.  I asked Defendant Ross to loosen the handcuffs."  (Id. at p. 46 ¶ 30.)

In addition, in his declaration supporting his opposition to Special Agent Ross' motion, Mr. Brewer articulated the physical and mental injuries he allegedly suffered due to the manner in which he was handcuffed.

> As a result of the tightness of how the handcuffs were applied, I endured losing my feeling in my hands for the duration of the three-hour-long detention and I required one of the officers, who only gave his first name, Jeff, to rub feeling into them.  When I got feeling back into my hands, I felt a burning sensation in my fingers and I felt like my hands were on fire.  This lasted into the following morning.  My fingers felt stiff for several days.

(Decl. of Jordan Brewer ¶ 3, Ex. A to Opp'n to Ross' Mot. Summ. J., ECF No. 53.)  He also contends that he now suffers from severe anxiety because of the handcuffing.  (See id. ¶ 4.)

"[A] claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional."  Cortez v. McCauley, 478 F.3d 1108, 1129 (10th Cir. 2007).

Mr. Brewer does not claim that he suffered any lasting physical injury nor does he submit any evidence that he sought medical treatment for injuries on his arms or wrists.  Moreover, Defendants have submitted a photograph of Mr. Brewer's wrists (Ex. 2 to Ross Decl., ECF No. 34-2) showing no visible marks on his arms or wrists.  Special Agent Ross stated in his declaration that there were no marks on Mr. Brewer's wrists.  (Ross Decl. ¶ 14.)

Mr. Brewer has not submitted any relevant evidence of treatment for psychological harm allegedly caused by the handcuffing.  The only evidence he produced was a medical record from

his treating physician, Dr. John S. Friden, who diagnosed Mr. Brewer as suffering from an anxiety disorder with some depression. But this record is dated August 12, 2010, over a year before Mr. Brewer was arrested and handcuffed. (See Petersen Reply Supp. Mot. Summ. J. at 50, ECF No. 50.) Nothing in the record shows an aggravation of his symptoms as a result of the arrest.

Two cases are instructive. First, in Cortez v. McCauley, the plaintiff asserted that the officers used excessive force when they handcuffed him in a manner that "left red marks that were visible for days afterward." 478 F.3d at 1129. The circuit court found no excessive force because the evidence of red marks that lasted for days was "insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified." Id. It then granted summary judgment on that issue.

Second, in Koch v. City of Del City, the court found that the plaintiff's injury was de minimis. A hospital report and photographs of her arms and wrists showed "superficial abrasions." 660 F.3d at 1248. As for complaints of "numbness in her wrist and forearm," the evidence showed only that she had been referred to a neurologist; there was no evidence "that she saw this neurologist or that any neurological injury was detected." Id. In short, because she did not meet her burden on summary judgment to show that her injuries were more than de minimis, the court dismissed her excessive force claim.

The same situation exists here. At best, Mr. Brewer has established nothing more than de minimis physical injuries (and he provides no relevant evidence of psychological injury). Accordingly, he has not satisfied his burden to show that a constitutional violation—i.e., excessive force— occurred.

\* \* \*

For the reasons set forth above, the court holds that Mr. Brewer has not met his burden under the qualified immunity standard to establish that his constitutional rights were violated. Accordingly, the Defendants are entitled to summary judgment on all of Mr. Brewer's § 1983 claims.

**Motion to Amend**

Mr. Brewer asks for permission to amend his complaint to add a retaliation claim. But the court has already considered Mr. Brewer's original claims and is granting summary judgment to the Defendants. Accordingly, the court denies his motion as moot.

**ORDER**

Defendant Jeffrey Ross's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 34) is GRANTED. Defendant Trevor Peterson's Motion for Summary Judgment (ECF No. 44) is GRANTED. Mr. Brewer's Motion to Amend (ECF No. 55) is DENIED AS MOOT.

SO ORDERED this 25th day of May, 2018.

BY THE COURT:

_Tena Campbell_

Tena Campbell
United States District Judge